Mr. Ruiz's conviction must be reversed for two reasons. First, the agent's Miranda advisal was inadequate. And second, Mr. Ruiz's Miranda waiver was not knowing and intelligent. Now first, as to the agent's explanation of the Miranda rights, there are a combination of two things that made the warnings inadequate. First, the agent explained that Mr. Ruiz's statements could be used in any court of law, immigration, or administrative proceedings. Then he followed up in the Miranda advisal saying that a judge will decide if he returns you or not, and that is why you have these rights. And then he ends the advisal explaining that he ends the advisal, the administrative advisal, saying that Mr. Ruiz's statements would be used against him in administrative proceedings. It's this combination that made Mr. Ruiz hear out of one ear that his statements would be used in three proceedings, and then out of the other ear he hears that his statements would only be used in administrative proceedings, thus narrowing his rights under Miranda and how he thought his statements would be used. Now, this also impacts Mr. Ruiz's right to counsel because he heard that a judge will decide if he gets returned or not, and that's why he has those rights. To Mr. Ruiz, that meant an immigration judge, and to a late person, a judge who returns you is an immigration judge. A criminal judge doesn't have the authority to deport you or return you home. But he also, I mean, the advisal also said, like, you are going to be prosecuted for federal crimes and said the judge could return you, but he also said the judge would decide to put you in jail. Like, aren't those things suggestive of criminal prosecution? Your Honor, yes, on one hand, but then I would just, it's the muddying of both of them, though, because, yes, on one hand, he does say that, but then on the other hand, he incorrectly explains what a criminal judge does, and it's exactly that muddying of saying the right thing but then saying the wrong thing that leaves someone like Mr. Ruiz confused and unable to determine if he wants his right to counsel because he believes, as he said in his declaration, he believed that he was going to be seen an immigration judge. He didn't understand that he was being charged criminally and that he was going to be put in jail no matter what. I think, and also to answer your question, Your Honor, Mr. Ruiz also noted in his declaration that he didn't understand the word prosecute. So saying that you're being prosecuted for a federal crime didn't really mean much to him when he doesn't understand what that word means. The agent did say crime or criminal multiple times as well in the advisal. Yes, Your Honor, he did, but at the same time, he incorrectly explained what a criminal judge would do, and I would just note again Mr. Ruiz's advisal, Mr. Ruiz's declaration, where he said that he did not understand he was being criminally prosecuted. And that's also clear throughout the back and forth in the advisal because he keeps saying, well, I don't want an attorney, I want to go home. So he's looking at this through the perspective of immigration court and immigration judge. And I know I'm kind of talking about Mr. Ruiz's perspective and we're kind of talking about the adequacy of the waiver, but I do think those things blend together because in San Juan Cruz, the court, even though in San Juan Cruz, even though it was only a question of were the Miranda warnings adequate, this court also looked at what happened from the perspective of San Juan Cruz and said that from San Juan's perspective, it was entirely unclear the nature of his rights. That's what we have here from Mr. Ruiz's perspective. It was entirely unclear would his statements be used in three proceedings or just one. Would they be used against him in criminal court at all or just administratively? And it was also unclear to him what his right to counsel because the agent placed that in a Miranda, the agent placed the right to counsel in an immigration context. So if he understood that he was going to be charged criminally and was going to be put in jail and that the judge had no say on whether or not he returned, Mr. Ruiz said in his declaration he would have asked for counsel. But again, he didn't understand the word prosecution. He had never been arrested before, never handcuffed before, had no idea what was going on. Can I ask you to turn to the question of the waiver and just whether the waiver was intelligent and knowing? And just to frame the question, there's a lot of evidence in the transcript that he was confused about a lot of things. And if I were reviewing it de novo, I might well agree with you. But there is also, we have sort of repeated the agent explaining. Each time he said he was confused, the agent would provide some further explanation. Then he would say eventually, like, yes, I do understand. So given the standard of review, what would you point to to say that the magistrate judge's finding here is clear error? Thank you, Your Honor. So I would point to a couple things that would show clear error here. First of all, the magistrate judge didn't even really go through a knowing and intelligent analysis. She solely focused on voluntariness, indicia of voluntariness. But she didn't apply the standard that we have that, you know, did Mr. Ruiz. Was he aware of the rights that he abandoned? And was he aware of the consequences of abandoning those rights? She never went through that analysis at all. She didn't even consider his declaration. And, Your Honor, she also did not apply a totality of the circumstances, didn't talk about his background, his history, his characteristics. So the record, I think it's easily clear error here because, Your Honor, she didn't even engage with the law. She kind of booted the question. Let me ask you a slightly different question, which is we agree with you that this rises to the level of clear error on the part of the district court. Why isn't the admission of those post-arrest statements simply harmless, given the other circumstantial evidence and his pre-arrest confession? Your Honor, it rises to the level of harmlessness because for every element of the offense, the magistrate judge relied on his post-arrest statements. And to be very clear, his post-arrest statements are very, in some ways, very different than his field statements because post-arrest is the only time he ever says, I came into the United States by jumping over the border fence. That's really important because that answers the elements of specific intent to enter at a time and place other than as designated and specific intent to enter free from official restraint. Now, it's the government's burden to show that the verdict is surely unattributable to the error. And when the magistrate judge solely relies on the post-arrest statements to meet those two elements of specific intent, and yes, she does mention circumstantial evidence, but that is just used to corroborate the post-arrest statement. So I think the government cannot prove that Mr. Ruiz's statements were harmless beyond a reasonable doubt just because truly every element, she relied on those statements. And that was the only way that Mr. Ruiz, the only time Mr. Ruiz talked about his mode of entry into the United States, which under Corrales-Vasquez, that's important because we have to know if someone is guilty of 1325A1, which is entering at a time other than as designated, or 1325A2, which is eluding inspection at the port of entry. I might have flip-flopped. So I think that's right. Can I just ask you one factual question? Of course. My understanding is that the video, the interrogation where this money was given and waived was videotaped, and I didn't see the video in the record before this, but I understand the magistrate judge did watch the video. Is that right? That's my understanding from the record, Your Honor. That's my understanding from the record, yes. Unless Your Honors have any more questions, I would submit and use the rest of my time for rebuttal. We took you a little bit past your time. We'll give you two minutes. Okay. Thank you very much. Good morning, Your Honors. May it please the Court. Amy Wong for the United States. Miranda does not require a talismanic incantation, but where, as here, the agent read the Miranda warnings nearly verbatim from the opinion, and the defendant, Ruiz Rivera, repeatedly and almost unequivocally confirmed that he understood, this Court should find the warnings were adequate, and based on the totality of circumstances, the waiver was knowing and intelligent. Is the test that the agent, and I'm talking about the intelligent knowing waiver issue right now, so it sounds like we just recorded and you just repeated the sort of notion that the agent repeatedly stated the Miranda warning, and, you know, I'm having difficulty with that as being the critical factor to consider, simply because the agent says something over and over and over again doesn't really go to whether or not the defendant is making a knowing and intelligent waiver of their rights. So, you know, when I read the record, I don't read the record in the same way that he unequivocally said yes. In fact, there are many places where the agent says, did you understand your rights? He says, more or less. The agent says, you know, what does that mean? It can't be more or less. It has to be yes or no. And then there's some back and forth where Mr. Ruiz-Rivera again seems confused. And so, you know, what really is the import of the fact that the agent repeated himself multiple times? So I wouldn't say the repetition of the rights is the critical factor here, but rather the totality of the circumstances and Mr. Ruiz's responses to when the agent says, are you sure you understand? Do you understand? And the agent very patiently and painstakingly made sure that he ended up with an unequivocal yes each time. The repeat, or I guess the second reading of the Miranda rights, was to ensure that Ruiz-Rivera did, in fact, acknowledge that he understood. And so based on that totality of the record, there's more indications that Ruiz-Rivera did understand as opposed to the isolated circumstances where he kind of equivocated more or less. Can you address your friend's argument that the pre-arrest statement was inadequate for harmlessness error analysis? To the extent this Court does find any error, we believe it would be harmless because the post-arrest statement was largely duplicative of the other evidence on the record. Ruiz-Rivera had already given a field admission to his citizenship as Mexican and being in the United States without permission. Additionally, based on the circumstances of his arrest, the magistrate judge found that those circumstances, the timing, the proximity to the border, laying down behind a shed with booties on, those all indicated the specific intent to come into the United States illegally. And then lastly, the AFAL custodian testified that based on a search of various government databases, Mr. Ruiz-Rivera did not have permission to enter the United States. Can you point us to where in the record the government used the pre-arrest statements to satisfy the various elements of the offense, as I think your friend on the other side said, that if you look at the record, only the post-arrest statements were used to satisfy each individual element. So I'd like to be able to discern whether or not that's accurate. I believe the pre-arrest statements were starting with the arresting agent at around ER 49. The arresting agent testified that he found Ruiz-Rivera laying next to a shed in booties and then testified that he conducted a field immigration inspection, and that's the point where Ruiz-Rivera admitted that he's a Mexican citizen. So you're really talking about the circumstantial evidence at this point, not necessarily reliance on the pre-arrest statements. And also Ruiz-Rivera's statements that he's a Mexican citizen without permission to enter the United States. But that, I mean, that by itself doesn't get you that he entered at a time and place other than as designated by immigration officers. For that, you need to rely on the circumstantial evidence of where he was found and the footwear and so forth. Is that right? Correct, Your Honor. As well as there was testimony that a scope operator had seen someone climb over the fence in the area near where Mr. Ruiz-Rivera was found, and that's what led to the arresting agent responding to that area and finding Ruiz-Rivera. Can you point us to where on the record that evidence is? The scope operator is at ER 4647. And so based on the totality of the circumstances where Ruiz-Rivera knowingly and voluntarily and intelligently waived his right to Miranda, that culminated in his written waiver as well. As to the adequacy of Miranda, we believe that this court's decision in Lundell has got to do with this. Let me just ask you a question about that. So Mr. Ruiz-Rivera was, in fact, didn't know how to read, correct? According to his statements, yes. Okay, which the district court didn't look at, right? The district court said he was asked multiple times, or I'm sorry, the magistrate judge asked, the warning was repeated multiple times and then relied pretty significantly on the sort of written circling or signature. And so if he doesn't know how to read, how is it that his sort of circling of the page, which in fact took quite a bit of explanation by the agent since he didn't understand how to even circle the page. I have a 7-year-old, and, you know, if I ask my 7-year-old to circle something, she'll do it. It doesn't necessarily mean she understands what she's circling. So I'm trying to understand why the mere act of making that written indication on the sheet is sufficient for purposes of the magistrate's holding. Because as the agent was going through the written waiver, the form that Ruiz-Rivera was circling, and there's no dispute from my friend on the other side that the agent did say, here's where you agree to speak if you understand circle, yes. Here's where you agree that you don't want an attorney if you understand circle, yes. And that's where Ruiz-Rivera affirmatively circled yes, that he understood he agreed to waive. And so do you not think that it was appropriate, or do you not think that the magistrate should have considered the fact that he doesn't know how to read for purposes of a written waiver? I think generally that is a consideration that could be a consideration. But here, there's nothing on the record that shows that he was misadvised based on the agent's reading of the waiver to him. Can I go back to what you said about the scope operator? I'm looking at the right part of the transcript. It looks like the scope operator himself did not testify, but the agent who got the report from the operator did. And there was a hearsay objection, and evidence about the scope was admitted not for its truth, but just as part of an explanation of why the responding agent did what he did. Is that right? That's correct, Your Honor. Okay. Because it does seem like if we actually had that in for the truth of the matter asserted, it does seem like very strong circumstantial evidence that, you know, this was the guy who had just come over the fence. But can we consider it for that, given the limited way in which it was admitted? Well, it goes to the effect on the responding agent, who then responded to the area. It's approximately 200 yards north of the border fence and 25 miles away from the nearest port of entry, with Ruiz Rivera and the circumstances of his arrest laying there in the brush at 10.30 p.m. wearing booties. You know, it's all the totality of the circumstances of his arrest that show that he crossed over the fence in the area where he was found. And so, if the Court has no further questions, we would submit an S.A. quarter for me. Thank you. You're welcome. Thank you, Your Honor. So, Your Honors, I want to make a couple points. So, first, the judge didn't rely on the testimony of the scope operator when coming to her verdict. Specifically on page ER 148 is when she goes through her analysis of each element, and not once does she mention the scope operator. So, I think we're starting to talk about this in terms of, well, was there enough evidence otherwise? And that's not the question. The question is, was the judge's verdict surely unattributable? And to answer that question, we have to look at what she actually said in the record, and she never mentions the scope operator. I would just like to point out also on ER 148, just for the element specific intent to enter time and place other than it's designated, she states the defendant admitted in his post-trial statement that he entered by climbing over the border fence. So, I think the scope conversation we're having is a red herring. Additionally, in terms of the knowing and involuntary waiver, sorry, knowing and intelligent waiver, I always do that. We just look at the back and forth in the record, and, you know, the agent asks, do you understand you have the right to silence? Mr. Ruiz says, yes, I'm silence. The agent says, are you sure you understand? Are you sure you understand? Mr. Ruiz says, what you are saying, I mean, saying like that, clarifying for me that some question I don't want to answer and all, something like that. And this is someone who does not understand their rights. He cannot repeat them back. So, I just think it's not fair to say that he's making these unequivocal yes statements when the record does not show that. Thank you, Your Honors. Thank you. Thank both counsel for the arguments and the cases submitted.
judges: MILLER, LEE, DESAI